# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

                Plaintiff-Appellee,

v

PAUL ROBERT HARTIGAN,

                Defendant-Appellant.

UNPUBLISHED
April 5, 2016

No. 322625
Macomb Circuit Court
LC No. 2013-000669-FH

Before: SERVITTO, P.J., and WILDER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by leave granted his guilty plea convictions to possession with intent to deliver less than 5 kilograms of marijuana, MCL 333.7401(2)(d)(iii), and attempted maintenance of a drug house, MCL 333.7405(1)(d). The circuit court sentenced defendant to two years' probation for his convictions. We reverse and remand to the circuit court for further proceedings.

In September 2012, the County of Macomb Enforcement Team (COMET) police officers, acting on a tip that defendant was conducting a marijuana grow operation, went to defendant's residence to investigate the claims. While speaking with defendant through a window at the front door, the police officers noticed the strong smell of marijuana emanating from the residence, in addition to planter pots and bags of potting soil within the living room. Defendant refused to cooperate with the police officers after several minutes of conversation because they did not have a search warrant. After approximately three minutes, the police officers forcibly entered defendant's residence, allegedly fearing that defendant was destroying evidence. The police officers conducted a protective sweep of the residence and secured the premises, and one police officer went back to the police station to obtain a search warrant. After procuring the search warrant, officers conducted a thorough search of the residence, recovering approximately 90 marijuana plants and 360 grams of bagged loose marijuana.

During defendant's preliminary examination, the district court considered whether the police officers' initial warrantless entry was a Fourth Amendment violation, thus necessitating the exclusion of all evidence found within the residence. The district court concluded that exigent circumstances existed, thus justifying the police officers' warrantless entry. At the circuit court, upon defendant's motion to quash the district court's bindover decision, the circuit

-1-

judge concluded that exigent circumstances did not exist, but that the evidence seized was nonetheless admissible under the inevitable discovery doctrine.

On appeal, defendant argues that by relying on evidence obtained in violation of the Fourth Amendment, the district court improperly bound him over to the circuit court. Defendant additionally contends that the circuit court erred by applying the inevitable discovery doctrine to justify the illegal search of defendant's residence. We agree.

We review "for an abuse of discretion a district court's decision to bind over a defendant." *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Furthermore, we pay no deference to the circuit court's decision to grant or reject a motion to quash the bindover. *Hudson*, 241 Mich App at 276.

> A circuit court's decision with respect to a motion to quash . . . is not entitled to deference because this Court applies the same standard of review to this issue as the circuit court. This Court therefore essentially sits in the same position as the circuit court when determining whether the district court abused its discretion. *Id.*

We review de novo preliminary questions of law, including interpretation of the rules of evidence as well as the effect of constitutional provisions. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

To bind a defendant over to the circuit court, the magistrate at a preliminary examination must "determine whether a felony was committed and whether there is probable cause to believe the defendant committed it." *People v Yost*, 468 Mich 122, 125-126; 659 NW2d 604 (2003). Probable cause exists where the evidence is "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Id.* at 126 (citation and quotation marks omitted). In determining whether probable cause exists, the magistrate must only consider legally admissible evidence. *People v Crippen*, 242 Mich App 278, 282; 617 NW2d 760 (2000).

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." US Const, Am IV. Generally, evidence obtained in violation of the Fourth Amendment will be inadmissible due to the exclusionary rule. See, e.g., *People v Stevens*, 460 Mich 626, 633-634; 597 NW2d 53 (1999). Furthermore, evidence that derives from the initial Fourth Amendment violation will be excluded under the "fruit of the poisonous tree" doctrine. See, e.g., *id.* at 633-634. However, several exceptions preclude the application of the exclusionary rule. One such exception is the "exigent circumstances" doctrine, in which the exclusionary rule will not operate if police "officers possess probable cause to believe that a crime was recently committed on the premises, and probable cause to believe that the premises contain evidence or perpetrators of the suspected crime." *People v Snider*, 239 Mich App 393, 408; 608 NW2d 502 (2000) (citation and quotation marks omitted). Furthermore, "the police must further establish the existence of an actual emergency on the basis of specific and objective

facts indicating that immediate action is necessary to . . . prevent the imminent destruction of evidence." *Id.* (citation and quotation marks omitted).

Another warrantless search exception is the inevitable discovery doctrine. Under this exception, evidence found in violation of the Fourth Amendment will not be excluded if the "prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been revealed in the absence of police misconduct." *Stevens*, 460 Mich at 637 (citation and quotation marks omitted).

The district court erred in finding that the police officers' initial entry into defendant's home was justified by exigent circumstances. There was no "actual emergency on the basis of specific and objective facts" that would lead to destruction of evidence in this case. *Snider*, 239 Mich App 408 (citation and quotation marks omitted). The police officers engaged in a brief conversation with defendant, who indicated that he would be unwilling to cooperate and permit police entry without a search warrant. The police officers did not hear any noises emanating from within the house that would indicate that defendant was in the process of destroying 90 marijuana plants of varying sizes—Officer Blackwell "didn't hear any noises at all." Officer Blackwell additionally testified that he did not know how long it would take to destroy marijuana, and that the only way he had personally destroyed it was by burning it. Therefore, the lack of an actual emergency based on specific and objective facts disables the exigent circumstances contention, and, without more, renders the initial warrantless entry into defendant's residence a Fourth Amendment violation.

The circuit court agreed with the above, but nevertheless determined that the bindover was appropriate given that the evidence considered by the district court was still admissible under the inevitable discovery doctrine. We disagree.

Officer Blackwell testified that officers received a tip that a marijuana grow operation was being conducted at defendant's home and then, acting on that tip, he arranged for a state trooper to take a drug canine to defendant's home. The trooper advised Blackwell that he had received a positive indication from the dog at defendant's garage. Taking the drug dog to sniff outside defendant's home constitutes a warrantless search under *Florida v Jardines*, __US__; 133 SCt 1409; 185 L Ed 2d 495 (2013), and evidence, if any, discovered pursuant to the dog sniff is suppressible.[1]

After the dog returned a positive indication, officers returned to defendant's home at a later date and spoke to defendant through a window for approximately three minutes before forcing their way into defendant's home without the benefit of a warrant. At some point, officers obtained a search warrant. Also at some point, approximately 90 marijuana plants supported by

---

[1] Defendant's case was still pending in the trial court at the time *Jardines* was decided. The holding of *Jardines* is thus unquestionably applicable. *People v Carp*, 298 Mich App 472, 507-508; 828 NW2d 685 (2012), quoting *Griffith v Kentucky*, 479 US 314, 328; 107 S Ct 708; 93 L Ed 2d 649 (1987).

a complex insulation, lighting, ventilation, and irrigation infrastructure were discovered within defendant's residence, in addition to the approximately 360 grams of bagged marijuana. While the search warrant and accompanying affidavit do not themselves appear in the lower court record, both the prosecution and defense made reference to the documents, as did the circuit court judge, who clearly had it in his hand and read from it.

Under the inevitable discovery doctrine, the prosecution bears the burden of establishing, by a preponderance of the evidence, that the evidence or information would have been discovered by lawful means, in the absence of police misconduct. *Stevens*, 460 Mich at 637. Here, the prosecution contends that inevitable discovery applies because had the police decided to wait to enter defendant's home until Officer Blackwell arrived with the search warrant, the home would thereafter have been legally searched and the evidence discovered. However, this argument requires the assumption that none of the evidence was discovered before the preparation of the search warrant and affidavit, or by other officers while Officer Blackwell was gone from the home obtaining the warrant. The record is unclear whether the police officers discovered any of the evidence before or after Officer Blackwell prepared the search warrant and affidavit. The record is also unclear as to whether they discovered any of the evidence before or after Officer Blackwell returned to defendant's residence with the search warrant.

Officer Blackwell testified that after officers initially entered the home, he believes that they made sure no one else was in the residence. Officer Blackwell testified that he was uncertain as to what took place in the home because he only stayed in the home for a short time before leaving to secure a search warrant. Based on his experience, he believed that the officers had gone through the house to make sure that they were safe. Officer Blackwell testified that he did not know what, if anything, the other officers who remained at the home had done at the house, including in the basement, while he left to obtain the search warrant and conceded that they could have opened doors or taken locks off. There was no other testimony as to what took place inside the home with respect to any evidence prior to the search warrant being obtained. The only other testimony at preliminary examination was from another sheriff's deputy who arrived at the home after the search warrant had been obtained. According to his testimony, when he arrived, several officers were already in the home and he, personally, did not participate in the search. *If* the police officers actually waited until Officer Blackwell prepared the affidavit and search warrant and then arrived with the search warrant before starting their search for evidence, then there *may* not have been a Fourth Amendment issue as the evidence *could* conceivably have been found pursuant to a valid search warrant. However, that was not the evidence presented to the district court. That being the case, the prosecution has not established by a preponderance of the evidence that the seized evidence would have been discovered by lawful means absent police misconduct. The district court thus abused its discretion in relying on the evidence to bind defendant over to the circuit court. Accordingly, the circuit court, which relied on the district court preliminary examination transcript and district court record, erred in ruling that the inevitable discovery doctrine applied. The record was insufficient to permit the circuit court to reach this conclusion. We therefore reverse the decision of circuit court and find that inevitable discovery doctrine is inapplicable. As a result, the evidence must be suppressed.

Reversed and remanded for proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra